## Chicago Junction Railway Company, Petitioner, v. Dollie F. Leitch et al., Respondents.

## Harry . S. Mecartney, Lien Petitioner, Appellee, v. Dollie F. Leitch and Olive Leitch, Respondents, Appellants.

## Gen. No. 24,385.

1. ATTORNEY AND CLIENT, § 138*—*right to lien.* Upon the abandonment of a petition for condemnation filed by a railway company, and the consequent allowance to respondents of a stated sum for costs and attorney's fees, the attorney for the respondents was entitled to a lien on such fund for his fees for such services as he had rendered respondents in their defense and in the presentation of their claim for their costs and attorney's fees following the abandonment of the petition; but the question whether the defense of the condemnation proceedings was a claim, etc., within the meaning of chapter 82, sec. 55 (J. & A. ¶ 611), creating attorney's liens, was not involved.

2. ATTORNEY AND CLIENT, § 150*—*when objection of lack of written notice of lien cannot be raised on appeal.* Where, upon the dismissal of condemnation proceedings, an order was entered allowing costs and attorney's fees to respondents, and part of the amount allowed was paid respondents and the remainder deposited with the clerk, and subsequently a petition for an attorney's lien was filed by one of the attorneys for the respondents, and thereafter, without objection by respondents, such order was amended so as to provide that said deposit with the clerk should abide the event of any order made upon the petition for a lien, the respondents were precluded . from raising the objection on appeal, of a lack of the written notice required by chapter 82, sec. 55 (J. & A. ¶ 611), creating attorney's liens.

3. ATTORNEY AND CLIENT, § 121*—*when fee dependent on "successful" outcome of litigation is properly disallowed.* In the case of a dispute between an attorney and his clients who were the respondents in a condemnation proceeding, where upon the abandonment of the proceedings an allowance for costs and attorney's fees was made to such respondents, and where the attorney claimed an additional per diem of $50 per day over that he had already been paid, under the contention that the litigation was "successful" within the meaning of an agreement between the parties, such double charge

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

was properly disallowed, as at best the provision upon which such charge was based, viz., that the final result of the litigation be successful, was ambiguous, and the court could not say from the record that the outcome was such a successful result as the parties had in mind in reference to an additional charge in such event.

4. ATTORNEY AND CLIENT, § 150*—*what fees court can consider on petition for lien.* The only attorneys' fees which the court could consider in the matter of such attorney's petition for a lien on money deposited in court after the abandonment of condemnation proceedings were those for which the railway company could be compelled to indemnify the respondents under the provisions of the Eminent Domain Act; and therefore an allowance for services performed on the question of establishing a "way of necessity" and other matters was improper.

5. ATTORNEY AND CLIENT, § 137b*—*what fees covered by statute.* The statute allowing an attorney's lien covers only such fees as may have been rendered on account of the suit, claim, judgment or cause of action in which the judgment or allowance for fees is rendered.

6. ATTORNEY AND CLIENT, § 123*—*when one attorney cannot recover severally one-half of value of services performed by him and another attorney.* Where two attorneys are employed severally in a cause, each is entitled to recover for services performed by him either pursuant to an agreement or for reasonable value, and one is not entitled to recover severally one-half of the value of the services of both, but the court will determine from all the facts and circumstances what is the full value for the services sued for.

7. ATTORNEY AND CLIENT, § 150*—*when finding on petition for lien will be reversed.* Where on the hearing of a petition for an attorney's lien on the fund which had been deposited in a condemnation proceeding upon the abandonment of the proceeding, as attorney's fees for the respondents, the finding for petitioner was reversed because the record showed that the allowance included items not rendered "on account of" the condemnation proceedings, and it did not appear what those charges amounted to.

### ADDITIONAL OPINION ON REHEARING.

ATTORNEY AND CLIENT, § 150*—*when lien petitioner estopped from claiming more than proportionate share of fund.* Where respondents in a condemnation case had two attorneys, and upon the abandonment of the case and the consequent allowance of attorneys' fees by the court to such respondents, a petition for a lien on the fund was filed by one of such attorneys, and where both attorneys had appeared in court and stated that they had agreed with the railroad attorneys that a stated sum was a reasonable sum to be paid to the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

respondents to reimburse them for attorneys' fees, the lien petitioner was estopped from claiming more of such fund than his proportionate share of it, considering the fees earned or services rendered by both counsel, although the other attorney was not a party in the Appellate Court.

Appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Reversed and remanded. Opinion filed October 15, 1919. Rehearing denied and additional opinion filed November 8, 1919.

JOHN S. HUEY and NEWTON A. PARTRIDGE, for appellants.

JOHN S. BROWN, for appellee.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

The Chicago Junction Railway Company brought two condemnation suits involving land belonging to Dollie F. Leitch and others, which were consolidated as one case. Mr. John S. Huey represented the respondents and in the course of the proceedings the lien petitioner, Harry S. Mecartney, was brought into the case as associate counsel. After considerable preliminary work had been done the railway company notified counsel for respondents that they were going to dismiss their petition and would expect to pay the latter their costs and reasonable attorney's fees as provided by the statute. Thereupon Mr. Huey and Mr. Mecartney had several conferences and some correspondence both between themselves and with the attorney for the railway company as to what the attorney's fees should be and it was finally arranged that the railway company should pay the respondents a total of $11,807.06 as and for their costs and expenses, including a reasonable attorney's fee, paid or incurred by them in preparing the defense of the condemnation

suit.  Of this amount, $1,807.06 was for cash paid out
for costs and other expenses and $10,000 was for at-
torney's fees.  Mr. Mecartney had rendered the re-
spondents bills from time to time and they had paid
him a total of $4,569.06 on account of his fees in the
case.  He claimed an additional sum of $4,930.94, mak-
ing his total fee $9,500.  It appears from the record
that Mr. Huey took the position that they had agreed
that $10,000 was a reasonable sum for the railway com-
pany to pay the respondents for their attorney's fees
and that each of them should, accordingly, accept $5,000
in full payment for their services, and it was further
suggested that inasmuch as Mr. Mecartney had re-
ceived an aggregate of $4,569.06, he should accept the
difference between that amount and $5,000, or $430.94,
in full payment of his bill.  Mr. Mecartney was unwill-
ing to agree to this, claiming that he had a contract
with the respondents under which he was entitled to
the additional amount above referred to.  While this
controversy was going on between the attorneys about
the fees, the court entered an order, on the railway
company's motion, dismissing their petition at their
costs and providing that the respondents have and
recover from the railway company their costs and
charges expended and have execution therefor.  This
was late in the month of January, 1918, and on the 6th
of February Mr. Mecartney filed the petition involved
in this appeal, by which he sought to establish an at-
torney's lien under the statute to recover the balance
of $4,930.94, which he claimed was due him.  This
petition was filed in the original condemnation pro-
ceedings.  On February 13, 1918, the court entered a
further order in which it was recited that the railway
company had dismissed its petition and that it appeared
to the court that the costs, expenses and reasonable
attorneys' fees of the respondents incurred in the de-
fense of said petition were $11,807.06, and it was

ordered that the railway company, forthwith, pay the said respondents as and for their costs, expenses and reasonable attorneys' fees, the sum of $11,807.06, and that the respondents have judgment against the railway company for that amount, and further, the order recited that it appearing to the court that the railway company had paid the respondents the sum of $6,307.06 and also that the railway company, at the direction of the court, had paid the clerk of the court the sum of $5,500 to abide the event of any order that might be entered on the petition for an attorney's lien, filed by Mr. Mecartney, said judgment should be marked, satisfied of record in the case.

Subsequently the court heard the evidence submitted in support of Mr. Mecartney's petition and the answer thereto which had been filed by the respondents and made a finding for the petitioner to the extent of $2,430.94, and upheld his claim for a lien for that amount. Judgment was entered accordingly, from which the respondents have perfected this appeal. The petitioner has assigned cross errors, claiming that the court erred in not giving him a judgment and lien for the full amount claimed by him.

In support of their appeal the respondents contend that this is not such a case as comes within the provisions of section 55 of chapter 82 of our statutes (J. & A. ¶ 611). That section provides: "That attorneys at law shall have a lien upon all claims, demands and causes of action * * * which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such attorneys, rendered or to be rendered for their clients on account of such suits, claims, demands or causes of action * * * and such lien shall attach to any verdict, judgment or decree en-

tered and to any money or property which may be recovered on account of such suits, claims, demands or causes of action     *     *     *.''

The question whether the defense of the condemnation proceedings was a claim, demand or cause of action, placed in the hands of the petitioner by the respondents for suit or collection within the meaning of the statute creating an attorney's lien, is not involved here. Upon abandonment by the railway company of their attempt to take the property under their condemnation proceedings, there arose a claim by the respondents for their reasonable costs and, attorney's fees under the provisions of section 10 of the Eminent Domain Act (J. & A. ¶ 5260). This claim was embodied in the judgment which the court entered in the original proceedings, in favor of the respondents and against the railway company, for said costs and attorney's fees in the sum of $11,807.06. While it appears from the record that the dismissal of the condemnation proceedings was, at least in part, due to the information the railway company had received to the effect that the Sanitary District of Chicago was going to take the property, it nevertheless appears that in the case in connection with which the petitioner rendered services, a claim arose in favor of his clients, and on that claim the court duly entered judgment and in satisfaction of that judgment the railway company has paid a part of the money into court to abide the disposition which may finally be made of the claim of the petitioner for his fees.

We hold that in that situation (with the qualifications hereinafter made), the petitioner would have a lien on the fund in question for his fees for such services as he had rendered the respondents in connection with the condemnation proceedings, both the defense of that action and presentation of the claim of his clients for their costs and attorney's fees, following the abandonment of the petition to condemn, by the railway company.

No authority on this question in this State has been called to our attention and we have found none. The trend of the decisions in other States involving statutes similar to, but worded somewhat differently from, ours, seems to be along the line of our holding as set forth above. 6 C. J. sec. 386; *Agricultural Ins. Co. v. Smith,* 112 N. Y. App. Div. 840; *Ennis v. Curry,* 22 Hun (N. Y.) 584; *Bevins v. Albro,* 86 Hun (N. Y.) 590; *Harlan & Co. v. Bennett,* 127 Ky. 572; *Merchants' Nat. Bank of Rome v. Armstrong,* 107 Ga. 479.

The respondents contend that the lien petitioner, Mecartney, has failed to establish any right to an attorney's lien, as against the fund in question, because the record contains no proof of such a notice as is provided for in the statute creating an attorney's lien. We think the respondents are not in a position to raise this point now. The lien petitioner filed his petition claiming an attorney's lien, in the condemnation proceedings, on February 6, 1918. The order of February 13, 1918, already referred to, was approved, in writing, by Mr. Huey representing the respondents. On March 6, 1918, on motion of the lien petitioner, Mecartney, the court entered an order amending the order of February 13 by adding the following: "and to abide the event of any order, judgment or adjudication, that shall be made by the court upon the petition filed by Harry S. Mecartney, herein, for a lien for attorney's fees and disbursements, which petition of the said Mecartney was filed on or about the 16th (6th) day of February, 1918." The record does not show any objection on the part of the respondents to the entering of this order. The record shows that these orders were entered with the knowledge and co-operation of the railway company. Having permitted this money to be paid into court, under these circumstances, pursuant to orders entered by the court and expressly approved by them or without any objection on their part, and having refrained from expressly raising the objection

of the lack of notice in writing from the lien petitioner to the railway company, in the court below, the respondents are not in a position to raise it now.

We are unable to agree with the lien petitioner that the trial court erred in not allowing him the lien claimed for the full amount of his bill. The court properly disallowed his claim for an additional $50 a day for the time spent, based on his contention that the litigation had been "successful," as provided for in certain communications from him to the defendants and in certain bills submitted by him to them in which he had made a charge for his time on the basis of $50 a day and referred to a possible balance of $50 a day as waiting the outcome of the litigation and a charge which was to be made "if the final result of the litigation is successful." At best, the provisions about this double charge "if the final result of the litigation is successful" were ambiguous and without anything more definite than we find in the record as to what should be considered a successful result of the litigation, we cannot say that the outcome shown by the evidence was such a successful result as the parties had in mind in references they made to an additional charge of $50 a day in such an event.

The ultimate question of fact to be decided in this case is, not how much is Mr. Mecartney entitled to as fees for the services rendered the respondents under his alleged agreement with them, but the question is, for what amount should he be awarded an attorney's lien as against the money paid into the court by the railway company? To determine that ultimate question, the court should first find what amount of Mr. Mecartney's fees can be taken into consideration, in fixing the lien that should be allowed. In our opinion the only fees that can be taken into consideration are those for which the railway company could be compelled to indemnify the respondents, under the provisions of the Eminent Domain Act.

Furthermore, the statute allowing an attorney's lien covers only such fees as may have been rendered on account of the suit, claim, judgment or cause of action in which the judgment or allowance for fees is rendered. *Davis v. Webber,* 66 Ark. 190; *Halsell v. Turner,* 84 Miss. 432.

It appears from the record in this case that charges were included in the fees of the lien petitioner, for which the trial court has granted him an attorney's lien, for which the railway company could not be required to indemnify the respondents, and which were not rendered "on account of" condemnation proceedings. In his brief, counsel for the lien petitioner states that the latter advised the respondents that they should have a "way of necessity" or right of access to their property, established of record, by a bill in chancery, and that proceedings should be early filed to that end. In one of his communications to Mr. Huey, the lien petitioner wrote: "I see no reason why this item" (not the one finally submitted) "should not be presented to the railway company for payment in full, although I well realize that there are some matters, such as the exhaustive brief work and examination of old residents to establish the way of necessity, and other matters, which I do not expect the court to allow." In one of his letters to the respondents, on the question of fees, the lien petitioner wrote, "It is possible and probable that all of the fees that you have agreed to pay me may not be taxed against the railroad company on the ground that some of the service is not strictly applicable to the trial of the issues, but to investigate our own title and our way of necessity, and perhaps some other questions." In one of his early conferences with one of the respondents, about fees, the lien petitioner testified he "told her perhaps we could not get all from the railroad company, that she would be liable to pay because there would be a great deal of work done incidental to it which even

the court might hold was not absolutely necessary, yet, even for precaution's sake in the ordinary course of business would have to be, done. I referred particularly to this way of necessity." When the lien petitioner submitted the respondents his first bill for services under date of November 23, 1916, he accompanied it with a letter referring to the charges he had made in the bill in which he wrote, in part, as follows: "Probably one-fourth of the time can be attributed to working out the brief and facts upon the issue of your right of way, and the balance to the suit proper."

Although it appears from the record that the trial court gave a lien for charges made by the lien petitioner which could not properly be taken into consideration in allowing the claim of the respondents against the railway company, for a sum sufficient to indemnify them for their fees, and which covered services which were not rendered "on account of" the condemnation proceedings, it does not appear from the record what those charges amount to and we therefore cannot determine what proportion of the claim of the lien petitioner for fees was proper to be taken into consideration in determining the amount for which he should be allowed a lien.

After finding the amount of the fees of the lien petitioner for which the respondents could properly make a claim against the railway company, it would not follow that the lien petitioner should be given a lien for that entire sum as against this fund which has been paid in by the railway company, but in our opinion he could only be given a lien for his proportionate share of the $10,000, taking into consideration the fees of Mr. Huey for which the defendant could claim indemnification against the railway company. It is not correct, as the latter claims, that the lien petitioner and he should divide the fees equally. Where two attorneys are severally employed in a cause, each is entitled to recover for the services rendered by him,

in accordance with whatever agreement may have been made with the clients and, in the absence of any such agreement, each is entitled to recover for the reasonable value of his own services. One of them is not entitled to recover severally, one-half of the value of the services of both attorneys, but the court will determine from all the facts and circumstances, what is the full value of the services sued for. 1 C. J. 754, sec. 334.

For the reasons stated we deem it necessary to reverse the judgment of the Circuit Court and remand this cause to that court for the determination there, of the following questions: First. What part of the $7,000 (which the lien petitioner would receive as fees under the decision of the trial court on this petition) was for services rendered "on account of" this case, which could properly be allowed in the claim of the respondents against the railway company for indemnification under section 10 of the Eminent Domain Act (J. & A. ¶ 5260). Second. On the basis of that amount and the total fees of both Mr. Mecartney and Mr. Huey, to what proportion of the $10,000 fund, which the railway company has paid in this case, would Mr. Mecartney be entitled? Those questions being determined, the lien petitioner would be entitled to a lien against the funds in the hands of the court, for the latter sum less the sum of $4,569.06, which has already been paid him by the respondents on account of his fees.

The judgment of the Circuit Court is reversed and the cause remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

ADDITIONAL OPINION FILED ON PETITION FOR REHEARING.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

In his petition for rehearing the lien petitioner

makes contentions which, in our opinion, are not applicable to the facts presented by the record in this case. The lien petitioner, as one of the attorneys for these respondents, appeared in court with Mr. Huey and advised the court that they had agreed with counsel representing the railway company that $10,000 was a fair and reasonable sum to be paid by the railway company to the respondents, for the purpose of reimbursing them for the attorneys' fees they had incurred. That included all fees which the respondents were obliged to pay their attorneys for all the services they had rendered "on account of this case." Having taken that position before the court in representing the respondents in their claim against the railway company for reimbursement for their attorneys' fees, as provided in the Eminent Domain Act, the lien petitioner is estopped from claiming more of this fund than his proportionate share of it, taking into consideration the fees earned or services rendered by both counsel engaged in the case, and he should not be given a lien on the fund paid in by the railway company for any greater sum than he can show that proportionate share amounts to. It is incumbent upon the lien petitioner to prove what his proportionate share of this fund is, in view of the facts shown by the record in this case to which we have referred. This is so, notwithstanding the fact that Mr. Huey is not a party here and has made no claim for a lien on this fund. The fund does not belong to counsel but to the respondents. A different situation would be presented and the contentions of the lien petitioner, as set forth in his petition for rehearing, might be in point, if the lien petitioner were endeavoring to establish his lien against a fund which had been awarded the respondents for the taking of their property, for example. But that is not this case. The lien petitioner seeks to establish an attorney's lien against a particular fund, paid in under the statute, for the

specific purpose of reimbursing the respondents in full for the attorney's fees incurred by them "on account of this case"; the amount of which fund the lien petitioner himself, with Mr. Huey, both acting as counsel for the respondents, has agreed is a fair and reasonable sum for that purpose. Under those facts, an attorney's lien against this fund, allowed the lien petitioner, must be limited as we have indicated.