GURLEY THOMAS ASHBY, Plaintiff-Appellee and Cross-Appellant, *v.* RALPH PRICE, Defendant-Appellant.—(Thomas W. Dye, Cross-Appellee.)

Third District    No. 82—91

Opinion filed January 26, 1983.

James J. Elson and Ted W. Dennis, both of Canton, for appellant.

Thomas W. Dye, of Macomb, for appellee, *pro se.*

James E. McPeak, of Macomb, for appellee Gurley Thomas Ashby.

JUSTICE ALLOY delivered the opinion of the court:

Defendant Ralph Price appeals from the entry of judgment *non obstante verdicto* against him in this comparative negligence action. The jury had returned a judgment in favor of the plaintiff Gurley Ashby, in the amount of $30,000, but had found that the negligence was evenly apportioned between Price and Ashby. Plaintiff Ashby filed a post-trial motion, seeking judgment *n.o.v.*, which the court granted him, finding that there was no evidence of his negligence in the accident. Defendant Price, on appeal, argues that the trial court erred in its judgment *n.o.v.* and that the court committed reversible error in refusing to allow the defense to impeach the plaintiff through the use of prior felony convictions. A cross-appeal has been filed by plaintiff Ashby against the court's award of $700 in attorney fees to attorney Thomas Dye, a former counsel for plaintiff Ashby. Ashby argues that the award of fees was contrary to the manifest weight of the evidence and an abuse of discretion.

The pertinent facts in the record reveal that the plaintiff Ashby and defendant Price were involved in a motorcycle-automobile accident on November 6, 1979, in Macomb, Illinois. The diagram below, drawn by this court as an aid in explanation, approximates the street intersections involved and the physical facts of the accident.

The weather the day of the accident was clear. As shown in the diagram, the defendant Ralph Price was parked on the east edge of White Street, facing north. Price was stopped in the parking lane and

had three passengers in his auto with him. Plaintiff Ashby was proceeding north on White Street on a motorcycle, traveling approximately 30 mph, the posted speed limit. When Ashby was about 130 to 140 feet from Price's stopped auto, defendant Price, without turn signal or indication of any kind, began a slow turn from the parking lane into the northbound lane of traffic on White Street. Price testified at trial that he was not aware of the approaching motorcycle at that time, nor at all until after the accident. Ashby believed that Price was entering onto the northbound lane and would proceed north on White Street. Ashby testified that when he noticed the Price auto's entrance into the northbound lane, he had insufficient time to stop so as to avoid a collision with the slow moving Price auto. Instead, as an avoidance move, Ashby quickly swerved his cycle into the southbound lane, to pass the Price auto. There was no approaching traffic in the oncoming southbound lane on White Street at the time. However, as Ashby swerved in order to pass, Price, again totally without signal of any kind, continued his left turn across both traffic lanes of White Street, heading for a driveway on the west side of the street. Suddenly surprised by seeing the Price auto continue its turn, thereby blocking the southbound lane, Ashby turned the cycle on its side (a maneuver utilized to avoid losing a leg in the impending accident) and skidded into the Price auto. Ashby estimated his speed at the time of the impact was 20 to 25 mph. The collision occurred in the southbound lane, and defendant Price's auto was damaged between the doors on the driver's side. Only two witnesses testified at trial, the plaintiff Ashby and the defendant Price. Price admitted his actions, as above set forth, and did not contradict the statements of plaintiff Ashby respecting the accident. The question of damages was contested as well as liability.

The jury returned a verdict in the amount of $30,000 in Ashby's favor, but apportioned the negligence evenly between Ashby and Price. Thereafter, pursuant to plaintiff's post-trial motion, the court entered its judgment *n.o.v.*, for the plaintiff Ashby in the amount of $30,000. The court found that there was no proven negligence on the part of Ashby. We turn then to the first issue raised in the appeal: whether the court erred in entering judgment *n.o.v.* in Ashby's favor.

As this court noted in *Gullberg v. Blue* (1980), 85 Ill. App. 3d 389, 391, 406 N.E.2d 927:

> "The cardinal rule to be followed in determining the correctness of a judgment *n.o.v.* (*non obstante verdicto* is set forth in the case of *Pedrick*, which stated:

'*** In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.' *Pedrick v. Peoria & Eastern R. R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, 513, 514."

We find no reason to alter this standard in the comparative negligence context, as questions of fact remain primarily within the purview of the jury. With this standard in mind, we examine the evidence in the instant case. There is no question raised concerning the negligence of the defendant Price in his operation of his auto. The question herein is whether there is evidence indicating that the plaintiff Ashby deviated from that standard of care which a reasonably prudent person, in his circumstances, would have used to avoid injury. (*Bothun v. Wallace* (1978), 61 Ill. App. 3d 365, 367, 377 N.E.2d 1054; *Denniston v. Skelly Oil Co.* (1977), 47 Ill. App. 3d 1054, 1065, 362 N.E.2d 712.) The defense finds evidence of Ashby's negligence in his alleged failure to reduce speed upon seeing Price move from the curb and in his failure to stay in the northbound lane of traffic. The evidence indicates that Ashby was traveling 30 mph when he first observed the Price auto suddenly, without warning, pull into the northbound lane from a dead stop in the parking lane. Ashby was 130-40 feet away at the time, traveling roughly 44 feet per second. He testified that he did not have enough time to stop his cycle in order to avoid a collision with the slow-moving Price auto. In order to avoid a collision, he swerved into the southbound lane of traffic, intending to thereby avoid the Price auto by passing it. It is uncontradicted that the southbound lane of traffic was without traffic at the time, and Ashby's belief that Price was going to proceed north in the northbound lane of White Street was completely reasonable, given the Price auto's prior position and its movement, completely without signal.

The defense suggestion that it would have been reasonable for Ashby to have stayed in the northbound lane, thereby avoiding any collision, is premised upon a knowledge he did not have, nor could reasonably have been expected to have. The faulty premise is that Ashby knew or should have known that Price was going to make a slow left turn over two lanes of traffic and into a driveway on the opposite side of the street. Ashby cannot be faulted for failing to stay in the northbound lane. The defense also suggests there may have been negligence in Ashby's excessive speed, but the suggestion that Ashby was traveling over 30 miles per hour is not supported by evidence in

the record. Ashby's statements as to his speed were not contradicted by Price, nor did the defense present expert evidence that the force of the impact indicated a speed in excess of 30 mph.

■■ Similarly unsupported in the evidence is the defense assertion that Ashby had time to stop after first noticing the Price auto move into the traffic lane. Ashby indicated his speed and position prior to and at the time he first observed the Price auto entering his lane, and he indicated that he swerved to the left, in order to avoid a collision, because he didn't have time to stop. There is no evidence in the record contradicting Ashby's assertion that he had insufficient time to stop, in order to avoid a collision. Nor do we see a reasonable inference of any negligence from his failure to swerve to the right to avoid the collision, given the movement of the Price auto, and its position and speed, along with the obvious risks of and general prohibition against passing on the right. The defense would also find evidence of negligence in Ashby's failure to reduce speed when swerving to the left, into the southbound lane of traffic. Yet, when the maneuver was begun, in order to avoid a collision, Ashby had no way of knowing or expecting that Price would cut off the southbound lane; and we would hardly term unreasonable a failure to reduce speed when entering the opposite lane of traffic, for the purpose of a swift pass of a slow moving vehicle in order to avoid a collision. It is especially true where, as here, the person passing has no way of knowing if the oncoming lane will remain free from traffic. In the circumstances, passing in an expeditious manner is not unreasonable. We find, on the evidence in the record, that there was no sufficient evidence for the jury to have concluded that Ashby breached any standard of care when he attempted to avoid the collision by swerving into the southbound lane, for the purpose of passing the Price auto. The jury's assessment of comparative negligence was contrary to the manifest weight of the evidence and not supportable. The evidence, viewed most favorably to Price, overwhelmingly favored Ashby, such that a finding of Ashby's negligence could not stand. The court properly entered judgment *n.o.v.* for plaintiff Ashby.

■ The other issue raised by the defense is whether the court erred in refusing to permit defense counsel to impeach the plaintiff Ashby through the use of prior felony convictions. The rule with respect to such impeachment was set forth in *People v. Montgomery* (1971), 47 Ill. 2d 510, 516, 268 N.E.2d 695:

"General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if

the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice."

The same standards are to be applied in civil cases. (*Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 363 N.E.2d 805.) The defense offer of proof in the instant case indicated that the defendant had been convicted of possession of stolen merchandise, in 1972, and of theft of over $150, in 1977. There is no dispute that the convictions met the requirements of *Montgomery* with respect to admissibility, except for the specific finding by the trial judge that there was too much danger of unfair prejudice. The court obviously felt that the probative value of the evidence was outweighed by its danger of unfair prejudice. The judge stated that he did not feel the ends of justice would be served by bringing the prior convictions to the jury's attention. While the defense urges the relevance of the impeachment evidence as to both liability and damages, the record reveals that the facts concerning the accident are largely uncontradicted. There was no evidence put forth by the defense to contradict Ashby's testimony concerning his speed or his ability to stop, despite counsel's speculation on those matters. Further, while pain and suffering damages of necessity require a credibility assessment, there was some corroboration for lost earnings and medical bills incurred. Under all the circumstances, we find no abuse of discretion in the court's decision to exclude the prior convictions, because of a determination of unfair prejudice as substantially outweighing their probative value.

For the reasons set forth, the judgment of the court in favor of the plaintiff, and against the defendant Price is affirmed.

We turn next to the issues involved in the cross-appeal, wherein plaintiff Ashby contends that the trial court abused its discretion in awarding intervening attorney, Thomas Dye, attorney fees in the amount of $700. The evidence in the record indicates that plaintiff Ashby had originally gone to the offices of attorney Thomas Dye, and there met with attorney Michael Karson, an associate, respecting his claims arising from the accident. Ashby and Karson entered into a written, contingent fee contract for legal services on the claim. The date of the contract was January 2, 1980. In May, 1980, attorney Karson left the Macomb area and before leaving informed his clients, including Ashby, that he was leaving and that Dye would be handling matters of his. After Karson's departure, Ashby and Dye met a

couple of times during the period from May to August 1980, concerning possible settlements, among other things. Neither Karson nor Dye filed any pleadings in the matter. In August 1980, Ashby informed Dye he was going to talk with other counsel. Dye testified herein that he was not informed at that time that he was dismissed from the case, but rather understood Ashby to mean that he was going to get another opinion. Ashby, for his part, testified that he dismissed Dye from the case in August 1980.

Ashby thereafter hired attorney James McPeak to prosecute his case, and it was McPeak who filed the action and tried the matter in court. Dye, who had filed his attorney's lien, sought intervention in the case after judgment. At the hearing, in addition to the evidence above recited, Dye introduced into evidence a time record card, indicating that he and Karson, combined, had spent 14.7 hours of work on the case. Included in that was 6.8 hours spent by Dye protecting his rights as against Ashby. Dye testified that his hourly rate was $50 per hour, and the court awarded him fees in the amount of $700. From that judgment Ashby appeals. He argues that the court's award of fees was contrary to the manifest weight of the evidence and an abuse of discretion.

■■ An initial question is raised concerning the validity of the original contingent fee contract, between Karson and Ashby, as a basis for Dye's recovery. Ashby argues that because that contract was between him and Karson, that Dye is limited to recovery on a *quantum meruit* basis. (See *Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 710, 355 N.E.2d 86.) Dye responds, arguing that he was Karson's employer and the contract was his, as owner of the firm. Nevertheless, Dye did not seek recovery for the contingent fee amount stated in the written contract. Rather, he sought recovery for the reasonable value of his services, as an attorney whose contingent fee contract had been unilaterally terminated by his client. (See *In re Estate of Murphy* (1978), 56 Ill. App. 3d 1037, 1040, 372 N.E.2d 878.) In other words, he sought recovery based upon a *quantum meruit* theory. Since both parties agree upon the ultimate basis for any recovery, we need not decide whether the *quantum meruit* recovery, if any, is based upon an oral agreement, implied in law, or upon a written contract, later assigned. With respect to Ashby's claims that his discharge of Dye was for cause, based upon his failure to file any pleadings and upon the substitution of attorneys, it must be noted that the record indicates Ashby, at least initially, accepted the substitution of Dye for Karson. Furthermore, there was nothing to establish that the failure to file pleadings by Karson and Dye was unreasonable, im-

proper or prejudicial to Ashby. At the very least, questions of fact existed with respect to the discharge, and we will not disturb the court's implicit finding that the discharge of Dye was without justifiable cause. Similarly, there was a question of fact presented in the evidence concerning the date of discharge. The court determined that the discharge did not occur prior to the time Dye filed his attorney's lien, and we find that determination supported in the evidence.

■ ■ The question, as raised by the parties, is what was the reasonable value of the services rendered to plaintiff Ashby. In determining that, a court must consider the skill and standing of the attorney employed, the nature of the cause, the novelty and difficulty of the questions, the amount and importance of the subject matter, the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charges in the community and the benefits resulting to the client. (*Laff v. Chapman Performance, Inc.* (1978), 63 Ill. App. 3d 297, 307, 379 N.E.2d 773.) Ashby initially faults Dye for failing to establish the reasonableness of his hourly fee and for failing to specify the services rendered. However, evidence in the form of the time record card for Dye's office, along with Dye's testimony, indicated that 7.9 hours of work had been expended in preparing this personal injury case. Time was spent in conferences, interviews, research, obtaining medical bills and doctors' report, telephone calls, letters and contact with the insurance adjuster. Sufficient specifics were presented with respect to the nature of the services performed by Karson and Dye on Ashby's behalf. The record also indicates that Dye was an experienced attorney in the area and that his customary hourly fee was $50. Counsel for plaintiff Ashby did not successfully contradict that evidence, nor seek to challenge, as unreasonable, the hourly fee. Next, counsel for Ashby contends that no benefit was received by his client from the services rendered by Karson and Dye, and that, therefore, no recovery should be permitted Dye. It is sufficient to note that it would be inherently unfair to the attorney to permit his client to dismiss him, without justifiable cause, after the attorney had spent time preparing the case, and then to deny the attorney any compensation at all, because he had not settled or successfully tried the case prior to the discharge. What ultimate benefit Karson and Dye would have achieved is an unanswerable question, because by discharging Dye, Ashby prevented him from taking the matter to fruition. So far as this record shows, the lack of benefit is attributable to the discharge. Benefit is but one consideration, in any event, and in light of the work done by Dye and his association prior to discharge, and in light of the timing of the dis-

charge, we are not persuaded that the lack of benefit should prevent Dye from recovering for the services rendered. We find that the court was correct in concluding that Dye was entitled to compensation for his services, at the rate of $50 per hour. However, we find error in the court's calculations as to the amount of the recovery. The court gave Dye compensation for almost all of the 14.7 hours he claimed to have put into the case. However, by his own admission, only 7.9 hours of that was spent in preparing Ashby's case. The other 6.8 hours claimed were spent for the purpose of protecting Dye's rights to recovery of attorney fees. That time, spent on the lien, research, preparation of the intervention and hearings, was not time expended for Ashby. Rather, it was time spent by Dye solely for his own benefit, in seeking to enforce contract rights to compensation. What Dye is essentially attempting to recover for here is his attorney fees, and the "ordinary expenses and burdens of litigation are not allowable to the successful party in the absence of a statute, or in the absence of some agreement or stipulation specially authorizing the allowance thereof ***." (*Ritter v. Ritter* (1943), 381 Ill. 549, 553, 46 N.E.2d 41; *House of Vision, Inc. v. Hiyane* (1969), 42 Ill. 2d 45, 50-51, 245 N.E.2d 468.) In the instant case, there is no statute or contractual provision relied upon by Dye for the recovery of his attorney fees in prosecuting his claim for attorney fees. Therefore, the court erred in awarding him compensation for the 6.8 hours spent in pursuing his claim.

The judgment of the circuit court in favor of Dye and as against Ashby is affirmed, insofar as liability is found, but is reversed as to the amount of recovery, with directions that a judgment be entered for $395.

The judgment of the circuit court of McDonough County in favor of Ashby, as against Price is affirmed in total.

Affirmed in part, reversed in part, with directions.

BARRY, P.J., and STOUDER, J., concur.