JOANNE W. JOHNS *et al.*, Plaintiffs and Petitioners-Appellees, v. GEOR- GEANN KLECAN, Defendant (Nicholas B. Blase *et al.*, Respondents-Appel- lants).

First District (3rd Division)   No. 1—88—1568

Opinion filed May 16, 1990.

1014

Sidney Z. Karasik, of Chicago, for appellants.

David K. Kremin, of William B. Meyers & Associates, of Chicago, for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

Joanne W. Johns and Elvera Spears, plaintiffs in a personal injury action against Georgeann Klecan, filed a petition for adjudication of attorney's lien. The petition sought the denial of any attorney fees to respondents, Nicholas B. Blase and Fred Lambruschi, in connection with their representation of petitioners in the suit against Klecan. After an evidentiary hearing, the trial court granted the petition. Respondents appeal.

Petitioners were involved in an automobile accident with Klecan on April 21, 1985. Shortly thereafter, petitioners retained Blase to represent them against Klecan pursuant to a contingency fee contract. Upon visiting Blase's law office for that purpose, one or both petitioners were interviewed by Leon Prandini, a paralegal, who recorded all the pertinent information regarding the accident. Thereafter, Prandini did some preliminary work on the case such as, but not limited to, corresponding with petitioners, their and Klecan's insurers and with petitioners' physicians. Specifically, Prandini sent Klecan's insurers a notice of attorney's lien dated April 30, 1985. Between the time petitioners retained Blase and July 20, 1985, Prandini spoke with petitioner Johns "many times" by telephone. Prandini estimated that Johns would call two to three times per week. After this preliminary work on the file, Prandini turned the file over to Blase, who began negotiations with Klecan's insurer.

Blase's negotiations resulted in settlement offers in October 1985 of $10,800 to Spears and $3,000 to Johns. Blase instructed Prandini to communicate the offers to petitioners along with his recommendation that petitioners reject them. Petitioners did so. As a result, Prandini told petitioners that suit would be filed in the case. Petitioners admitted being so advised, but denied that Prandini had advised them that Lambruschi would be filing the suit on their behalf. Prandini further claimed that petitioners did not object. Also in October, Prandini corresponded further with Klecan's insurer and with petitioners' physician. Blase's law firm sent petitioners' file to Lambruschi in December. Prandini did not work on petitioners' case thereafter. He estimated spending 18 to 20 hours on petitioners' case *in toto*. Blase testified that in noncontingent fee cases he charged an hourly rate of $100 for services performed by his office.

After receiving petitioners' file on December 26, reviewing it and dictating a complaint, Lambruschi filed suit against Klecan on petitioners' behalf on December 30, 1985. On January 2, 1986, Lambruschi claimed, but petitioners could not recall, that he communicated a second offer from Klecan's insurer to petitioners. Prandini claimed,

but petitioners also could not recall, that he sent them copies of the complaint filed by Lambruschi on March 14, 1986, per their request.

Instead, petitioners claimed being first advised of that fact in March by a letter from Lambruschi. Due to their dissatisfaction with Blase's representation and his transfer of their case to Lambruschi, petitioners decided to discharge them as their attorneys. Johns called Prandini on March 24 and advised him of that fact. Upon being advised by Prandini that she would have to discharge Blase and Lambruschi in writing, Johns sent Blase a letter to that effect the same day. Although Prandini acknowledged receipt of the letter when Johns called on April 1 or 2, he informed her that she needed to send him some "legal forms" to properly discharge the attorneys.

Under a contingency fee contract dated April 11, 1986, petitioners retained the law firm of William B. Meyers & Associates to prosecute their claims against Klecan. By a letter dated the same day, petitioners again advised Blase that they were discharging him and advised him of their retention of new legal counsel. Blase received this letter on April 24, 1986, as an attachment to a letter from Meyers dated April 22. The letter sought Blase's execution of a substitution of attorneys, all material relevant to petitioners' case and an itemization of costs to be reimbursed to Blase or Lambruschi. Both Blase and Lambruschi admitted receiving the Meyers letter by April 24. However, Blase claimed that it was the first notice he had received of his discharge by petitioners.

By letter dated April 30, 1986, Lambruschi advised Klecan of service upon her, as a nonresident, by means of service of summons upon the Illinois Secretary of State on April 17. Lambruschi also enclosed a copy of the summons and an affidavit of compliance, all as required under the Illinois Vehicle Code for such substitute service (Ill. Rev. Stat. 1985, ch. 95½, par. 10—301). Sometime in May, Klecan's insurer made another settlement offer to petitioners through Lambruschi. Lambruschi communicated the offer to petitioners and recommended its rejection. On June 2 and 16, 1986, Meyers wrote Blase again requesting the return of the substitution of attorney forms and an itemization of expenses. After petitioners' action was dismissed for want of prosecution on July 2, 1986, Lambruschi obtained a vacatur of that dismissal at the request of Meyers. Meyers filed the substitution of attorney on September 19. Lambruschi estimated that he spent 8 to 10 hours working on petitioners' case. Lambruschi also testified that defense lawyers in the personal injury cases he prosecuted charged $200 to $250 per hour.

On June 3, 1987, the petitioners settled their claims against Kle-

can in exchange for the payment of $20,000 to Spears and $3,000 to Johns. Petitioners filed the original petition to adjudicate the attorney's lien on October 7, 1987.

The trial court expressed two bases for denying fees to respondents. It found, first, that they had failed to serve a notice of attorney's lien upon Klecan, as statutorily required to enforce their attorney's lien. (Ill. Rev. Stat. 1985, ch. 13, par. 14.) Secondly, the trial court found that, although respondents would have been entitled to a *quantum meruit* recovery had they proved "services rendered and reasonable hourly rates" therefor by competent evidence, respondents failed to do so. In concluding that respondents' evidence was inadequate, the trial court expressly relied upon *Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 518 N.E.2d 424. It also relied on an Illinois Bar Journal article entitled, Closen & Tobin, *The Contingent Contingency Fee Arrangement: Compensation of the Contingency Fee Attorney Discharged by the Client*, 76 Ill. B.J. 916 (1987).

OPINION

On appeal, respondents contend that the trial court erred in relying upon *Kaiser* in denying a *quantum meruit* recovery because *Kaiser* involved the recovery pursuant to a contract of reasonable legal fees charged on an hourly basis rather than a contingent fee arrangement or a *quantum meruit* recovery of legal fees. Respondents note the rationale underlying the doctrine of *quantum meruit, viz.*, that one who benefits from another's services should pay the reasonable value thereof. Given that rationale, respondents assert, the trial court should have instead compared the services performed by them and Myers for petitioners without any regard as to the time spent in performing them and then allocated the one-third portion of the settlement funds available for attorney fees between them accordingly. In support, respondents cite *Phelps v. Elgin, Joliet & Eastern Ry. Co.* (1966), 70 Ill. App. 2d 89, 217 N.E.2d 519, and *Baker v. City of Granite City* (1983), 112 Ill. App. 3d 1096, 446 N.E.2d 531.

Petitioners respond that the trial court properly relied upon *Kaiser*. They so conclude because the same policy considerations which underlie the rule in contingent fee cases, that a discharged attorney is entitled only to fees calculated on a *quantum meruit* basis (*Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 399 N.E.2d 969), apply with equal force to retainer contracts for a predetermined amount (*Simon v. Auler* (1987), 155 Ill. App. 3d 1000, 508 N.E.2d 1102).

■ Preliminarily, we must note that a trial court's decision

whether or not to award attorney fees is a matter within its discretion and will not be disturbed absent an abuse of that discretion. (See, e.g., *Lurie v. Canadian Javelin, Ltd.* (1982), 93 Ill. 2d 231, 443 N.E.2d 592.) That having been noted, we cannot agree with petitioners that *Simon* justifies the trial court's reliance on *Kaiser* to deny respondents any fees whatsoever for representing them. As we read *Rhoades*, the "policy considerations" to which *Simon* refers are that: (1) a client has the right, under Illinois law, to discharge his attorney at any time, with or without cause; (2) requiring the client to pay the attorney discharged, without cause, the full legal fees contracted for would render that right meaningless since the client would have to establish cause for discharge to exercise it; (3) allowing attorneys who did little or no work prior to discharge to recover the full contract fees would raise the possibility of excessive fees; and (4) a client is a consumer of legal services and Illinois has an established policy of protecting all consumers. *Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 227-29, 399 N.E.2d 969.

■ We see no reason why, as petitioners implicitly argue, the policy considerations which justify limiting the recovery of legal fees after discharge to a *quantum meruit* recovery also necessarily support or require extending to contingency fee cases the rule established in *Kaiser* that no recovery of reasonable hourly fees is allowed pursuant to a contract unless the attorneys present detailed time records. The only policy consideration which, arguably, does so is the concern for the possibility of excessive fees. However, we believe that trial courts can adequately guard against that possibility without requiring that contingent fee attorneys account for the time they spend on a case with the same specificity and exactitude of hourly fee attorneys.

■ Moreover, the time and labor required in a case is but one factor to be considered in determining a reasonable attorney fee under the doctrine of *quantum meruit*. The other factors are the attorney's skill and standing, the nature of the cause and the novelty and difficulty of the subject matter, the degree of responsibility in managing the cause, the usual and customary charge in the community and the benefits resulting to the client. (*Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 711, 355 N.E.2d 86.) Since the time and labor required is but one factor in the *quantum meruit* equation, we do not believe that the failure to account for the time spent on a case in exacting detail should, alone, preclude any recovery of fees. At most, that failure militates in favor of a reduced fee.

We also note that, contrary to petitioners' assertion, it cannot be said that respondents adduced absolutely no evidence as to the the

services rendered petitioners during the time which they spent on petitioners' case. To the contrary, respondents did present such evidence. Having done so, the proper question before the court was whether that evidence was sufficient to support an award of fees.

In *Ashby v. Price* (1983), 112 Ill. App. 3d 114, 445 N.E.2d 438, a plaintiff in a personal injury case had retained two attorneys on a contingency basis. The attorneys did not file any pleadings in the case and did not obtain any recovery for the plaintiff by way of settlement or otherwise. However, they did discuss possible settlements with him. In contesting a *quantum meruit* award of fees to one of the attorneys, Dye, the plaintiff asserted that Dye failed to establish the reasonableness of his hourly fee and to specify the services rendered. In rejecting that contention, the court stated:

> "[E]vidence in the form of the time record for Dye's office, along with Dye's testimony, indicated that 7.9 hours of work had been expended in preparing this *** case. Time was spent in conferences, interviews, research, obtaining medical bills and doctors' report[s], telephone calls, letters and contact with the insurance adjuster. Sufficient specifics were presented with respect to the nature of the services performed by *** Dye on Ashby's behalf. The record also indicates that Dye was an experienced attorney in the area and that his customary hourly fee was $50. Counsel for *** Ashby did not successfully contradict that evidence, nor seek to challenge, as unreasonable, the hourly fee." (*Ashby*, 112 Ill. App. 3d at 122.)

In then rejecting the contention that the plaintiff had not benefitted from Dye's services, the court further stated:

> "It is sufficient to note that it would be inherently unfair to the attorney to permit his client to dismiss him, without justifiable cause, after the attorney had spent time preparing the case, and then to deny the attorney any compensation at all, because he had not settled or successfully tried the case prior to the discharge. What ultimate benefit *** Dye would have achieved is an unanswerable question, because by discharging Dye, Ashby prevented him from taking the matter to fruition. So far as this record shows, the lack of benefit is attributable to the discharge. Benefit is but one consideration, in any event, and in light of the work done by Dye and his associat[e] prior to discharge, and in light of the timing of the discharge, we are not persuaded that the lack of benefit should prevent Dye from recovering for the services rendered. *** [T]he court was correct in concluding that Dye was entitled to compensation for his ser-

vices, at the rate of $50 per hour." *Ashby*, 112 Ill. App. 3d at 122-23.

■ Inasmuch as *Ashby* was a personal injury contingent fee case, we believe that it, rather than *Kaiser*, provides the proper standard of proof to be met by attorneys in such cases to obtain *quantum meruit* fees after discharge. Respondents argue that they adduced sufficient evidence to warrant a comparison of the services they and attorney Meyers rendered to petitioners and an apportionment of the attorney fee portion of the recovery. However, we believe that *Ashby* establishes the better approach to be taken in cases of this type. Determining the amount of total time spent on cases in performing legitimate services for the client and then multiplying that time by a reasonable hourly rate, as in *Ashby*, is, we believe, the best method to determine the reasonable value of a discharged attorney's services. That approach avoids the problems inherent in the comparison/apportionment approach of cases such as *Phelps v. Elgin, Joliet & Eastern Ry. Co.* (1966), 70 Ill. App. 2d 89, 217 N.E.2d 519, and *Baker v. City of Granite City* (1983), 112 Ill. App. 3d 1096, 446 N.E.2d 531. It is much easier for a trial court to undertake the *Ashby* approach than to place a value on the perhaps widely varying services performed by attorneys *vis-a-vis* the client's ultimate recovery.

■ In view of *Ashby*, we conclude respondents adduced sufficient evidence to support an award of a reasonable fee in this case. Prandini, Blase's paralegal, testified in detail regarding the services he performed for petitioners. He also estimated spending 18 to 20 hours on their case. In contrast to Prandini, Blase failed to specify in detail the services he personally performed for petitioners beyond engaging in settlement negotiations with Klecan's insurer, although he did state that he charged $100 per hour for work done by his office in noncontingent fee cases. Blase's testimony was inadequate to justify an award of fees for the time he personally spent on petitioners' case. However, Prandini's testimony was sufficient to justify an award to Blase for Prandini's time. Moreover, there is sufficient Illinois authority for an award of fees to Blase for Prandini's time. See *Fiorito v. Jones* (1978), 72 Ill. 2d 73, 89, 377 N.E.2d 1019; *Losurdo Brothers v. Arkin Distributing Co.* (1984), 125 Ill. App. 3d 267, 276, 465 N.E.2d 139; *Merchandise National Bank v. Scanlon* (1980), 86 Ill. App. 3d 719, 727, 408 N.E.2d 248.

■ Lambruschi's testimony was also sufficient, under *Ashby*, to support an award of fees to him based on an hourly wage. He testified that upon receiving petitioners' file from Blase's office, he reviewed it, dictated a complaint and filed the suit on petitioners' behalf

against Klecan. He also obtained a special process server to serve summons upon Klecan and, when that proved unsuccessful, he obtained service of summons through the Secretary of State. It is also undisputed that he communicated a settlement offer from Klecan's insurer to petitioners in May 1986. Lastly, Lambruschi obtained a vacatur of a dismissal for want of prosecution of petitioners' action. In addition to the evidence of the services performed on petitioners' behalf, Lambruschi testified that he spent 8 to 10 hours on their case and, by comparison to personal injury defense lawyers, valued his time at $200 to $250 per hour. Lambruschi's testimony was thus sufficient to meet the *Ashby* standard as to the time and labor element of a *quantum meruit* fee award.

&#9646; The foregoing evidence provided a sufficient basis from which the trial court could determine reasonable fees for Prandini's and Lambruschi's time. The failure to do so was error. In this regard, we note that a trial court is not limited to the evidence presented in arriving at a reasonable fee but may also use the knowledge it has acquired in the discharge of professional duties to value legal services rendered. (*In re Estate of Healy* (1985), 137 Ill. App. 3d 406, 411, 484 N.E.2d 890; *Bellow v. Bellow* (1981), 94 Ill. App. 3d 361, 376, 419 N.E.2d 924.) Having concluded that respondents failed to adduce any evidence regarding the time spent on petitioners' case, the trial court never reached the issue of the reasonableness of respondents' valuation of their services and, thus, did not apply its own knowledge thereto. On remand, it should take into consideration whatever evidence the parties adduce on the valuation of Prandini's and Lambruschi's services and apply its own knowledge thereto to arrive at a reasonable fee award to respondents.

*Kaiser* does not compel a contrary conclusion. In *Kaiser*, a lessor sought from its lessees its legal fees incurred in litigation with them under a lease providing that the lessees would pay such fees. The lessor's attorneys sought payment, at bottom, on an hourly basis. In passing upon the trial court's action on the petition, the appellate court first noted that, even when they are sought pursuant to a contract, only attorney fees which are reasonable will be allowed. (*Kaiser*, 164 Ill. App. 3d at 983.) The court then held that a petition for fees must specify the services performed, who performed them, the time expended thereon and the hourly rate therefor and that a petitioner must present "detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated." *Kaiser*, 164 Ill. App. 3d at 984.

This case, like *Kaiser*, ultimately involves the calculation of rea-

sonable attorney fees. That similarity notwithstanding, we find *Kaiser* so inapposite to this case as to be inapplicable here. As we have earlier indicated, *Kaiser* is inapposite because it did not involve either a contingent fee arrangement or a request for a *quantum meruit* recovery of fees in a contingent fee setting. Moreover, in determining what were reasonable attorney fees in the setting before it, the *Kaiser* court did not rely upon any personal injury contingent fee cases.

Rather, *Fiorito v. Jones* (1978), 72 Ill. 2d 73, 377 N.E.2d 1019, *Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1 and *Board of Education v. County of Lake* (1987), 156 Ill. App. 3d 1064, 509 N.E.2d 1088, all involved petitions for attorney fees in class action lawsuits, in which the fees are normally calculated under the "lodestar" method. That calculation involves, *inter alia,* the multiplication of an hourly rate by the number of hours expended on the case. (*Heckmann v. Hospital Service Corp.* (1982), 104 Ill. App. 3d 728, 432 N.E.2d 891.) In addition, *Ealy v. Peddy* (1985), 138 Ill. App. 3d 397, 485 N.E.2d 1182, involved a claim for fees in a marriage dissolution proceeding, in which contingent fees are prohibited (107 Ill. 2d R. 2—106(c)(4)).[1] We find the differences between the calculation of fees in such cases and in personal injury cases so marked as to make such cases totally inapposite in the calculation of a *quantum meruit* recovery of fees in the latter type cases. For these reasons, the trial court erred in relying upon *Kaiser* to deny fees to respondents.

In addition, the fact that the attorney in *Ashby* was discharged without cause does not make *Ashby* inapplicable here, where respondents were, at least arguably, discharged with cause. Such attorneys are entitled, like those discharged without cause, to a *quantum meruit* recovery of fees. (*Tobias v. King* (1980), 84 Ill. App. 3d 998, 1001, 406 N.E.2d 101, citing *Rhoades*, 78 Ill. 2d 217, 399 N.E.2d 969.) Parenthetically, the *Tobias* court's observation that time records were necessary for the award of fees to the discharged attorney, not his successor, because only the former was limited to a reasonable fee on *quantum meruit* basis (*Tobias*, 84 Ill. App. 3d at 1002), does not compel a conclusion contrary to that which we have reached. There is no indication in *Tobias* as to, nor did the court specify, the detail required in such time records. Therefore, we will not construe *Tobias* as requiring time records as detailed as those required in *Kaiser*.

Moreover, we believe that the Illinois Bar Journal article upon which the trial court also relied in denying fees to respondents suffers

---

[1]*In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 411 N.E.2d 947, which petitioners cite in their brief, is inapposite for the same reason.

from the same infirmity as *Kaiser*. That is, other than *Tobias*, it relies upon Illinois cases not involving contingency fees in personal injury cases to support its conclusion that "[b]ecause the time expended by attorneys is such a crucial element in determining a reasonable fee, it is essential that all attorneys, including contingency fee attorneys, keep detailed time records of their work." (Closen & Tobin, *The Contingent Contingency Fee Arrangement: Compensation of the Contingency Fee Attorney Discharged by the Client*, 76 Ill. B.J. 916, 920 (1987).) Specifically, *In re Estate of Healy* (1985), 137 Ill. App. 3d 406, 484 N.E.2d 890, involved a petition for fees in a probate proceeding contracted for on an hourly basis. *In re Marriage of Ransom* (1981), 102 Ill. App. 3d 38, 429 N.E.2d 594, involved a petition for fees in a marriage dissolution proceeding also contracted for on an hourly basis.

▮▮ Additionally, we cannot agree with the conclusion in *Kaiser*, cited by petitioners, that the additional factors articulated in *Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 711, 355 N.E.2d 86, for determining a reasonable fee under *quantum meruit* are to be considered only after detailed time records are presented to a trial court. (*Kaiser*, 164 Ill. App. 3d at 984.) Rather, evidence relating to the time and labor element of that calculation, if sufficient, is to be considered *along with* any evidence relating to the additional factors. However, we do agree with petitioners that attorney Meyers was not limited to a *quantum meruit* recovery of fees, as respondents contend. Rather, under *Tobias*, he is entitled to the balance of the portion of the settlement proceeds set aside for the payment of attorney remaining after the payment of any fees to respondents. (*Tobias*, 84 Ill. App. 3d at 1002.) As petitioners note, although they fail to concede the same fact in relying upon *Kaiser*, the case relied upon by respondents for that argument, *Chicago Junction Ry. Co. v. Leitch* (1919), 215 Ill. App. 67, did not involve a contingent fee contract.

▮ Finally, respondents' failure to present any expert testimony regarding the reasonableness of the value of their services on an hourly basis did not, as petitioners contend, provide an additional basis to deny them any fees whatsoever. While it may be proper for an attorney seeking fees to present expert testimony on the issue of what is a reasonable fee (see, *e.g.*, *In re Marriage of Angiuli* (1985), 134 Ill. App. 3d 417, 480 N.E.2d 513), he is not required to do so as a matter of law.

▮ In summary, we hold that an attorney working on a contingency basis in a personal injury case is not required to present evidence as detailed as that required in *Kaiser* to establish his right to a

reasonable fee under *quantum meruit* in case of discharge. Where he presents sufficient evidence of the time and labor which he spent on his former client's case, that evidence must be considered along with all the other relevant factors in deciding upon his entitlement to any fees for services rendered.

For all of the foregoing reasons, the order denying any fees to respondents is reversed and this cause is remanded for further proceedings consistent herewith.

Reversed and remanded.

CERDA, P.J., and WHITE, J., concur.