2024 IL App (2d) 230250-U
No. 2-23-0250
Order filed March 14, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| TOMASZ POREBA, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 20-L-331 |
| | ) | 21-L-52 |
| | ) | |
| STEPHANIE L. CHANDLER and | ) | |
| VICTORIA S. WHITE, | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Robert K. Villa, |
| (Trent Law Firm P.C., Appellant). | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Justice Mullen concurred in the judgment.
Justice Hutchinson specially concurred.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion in its *quantum meruit* award of fees and costs to law firm that initially represented plaintiff with respect to two car accidents. The award, though substantially less than what the law firm requested, was reasonable given the relative simplicity of the cases and the modest work the law firm did before plaintiff hired new counsel.

¶ 2    Plaintiff, Tomasz Poreba, retained appellant, Trent Law Firm, P.C. (Trent) to represent him regarding two motor vehicle accidents. Trent later withdrew as counsel, citing irreconcilable

differences between Trent and plaintiff. Plaintiff retained new counsel, who ultimately settled each case. Thereafter, plaintiff filed a motion to adjudicate Trent's attorney liens. The trial court awarded Trent $3392 in fees and $1695.80 in costs, for a total judgment of $5087.80. Trent timely appealed. Trent contends that the trial court abused its discretion in determining the award. We affirm but modify the judgment to reflect an award of $3900 in attorney fees and $1695.80 in costs, for a total judgment of $5595.80.

¶ 3                                I. BACKGROUND

¶ 4                A. Plaintiff's Motion to Adjudicate Trent's Attorney Liens

¶ 5     On November 16, 2022, plaintiff filed his motion to adjudicate Trent's attorney liens. He alleged as follows. Plaintiff retained Trent to represent him concerning two motor vehicle accidents. The first occurred on January 25, 2019, and involved defendant Victoria S. White. The second occurred on March 22, 2019, and involved defendant Stephanie L. Chandler. Trent filed a complaint against each defendant, and the cases were subsequently consolidated. On August 9, 2021, Trent filed a motion to withdraw as counsel, citing irreconcilable differences between Trent and plaintiff. The motion was granted on August 12, 2021. Following Trent's withdrawal, plaintiff retained Ankin Law Offices LLC (Ankin) to represent him in the consolidated matter.

¶ 6     Plaintiff further alleged that, when Trent withdrew, no discovery had been conducted. Ankin contacted Trent to obtain a copy of plaintiff's file. According to plaintiff, Trent informed Ankin that it requested $2660.34 in reimbursement for costs incurred in the cases. In addition, Trent said it would charge Ankin $486.94 for copying the file. Ankin advised Trent that it was willing to pick up the file and make its own copies, but Trent refused. Thus, Ankin "had no choice bit [*sic*] to re-order all medical records and bills in the case as well as obtain all pleadings directly from defense counsel." Ankin "proceeded to answer written discovery in the consolidated cases,

produced \*\*\* [p]laintiff for his deposition[,] and deposed \*\*\* [d]efendants." After depositions were completed, Ankin initiated settlement discussions, and both cases were settled.

¶ 7    Plaintiff asked the trial court to adjudicate Trent's attorney liens to zero dollars, deny any amount in *quantum meruit*, and find that Trent was entitled to no costs.

¶ 8                    B. Trent's Response to Plaintiff's Motion

                    to Adjudicate Trent's Attorney Liens

¶ 9    On February 1, 2023, Trent filed an "answer" to plaintiff's motion and a "memorandum" in opposition with various exhibits[1] attached. Trent argued that (1) it kept plaintiff's case file to maintain a retaining lien for the work it performed in plaintiff's cases; (2) it was entitled to a proportionate majority share of the attorney fees incurred in the cases or, alternatively, payment in

---

[1]Trent attached the following exhibits: (A) Trent's February 1, 2023, invoice for services rendered from March 22, 2019, through July 27, 2021; (B) Trent's April 7, 2021, e-mail correspondence with an insurance company in the Chandler case, showing that the company had issued checks in 2019 for $2953.43 and $1646.68, but they remained uncashed; (C) the February 2, 2019, attorney-client agreement between plaintiff and Trent; (D) a group exhibit including e-mails between Trent and plaintiff in 2021; (E) an October 22, 2021, letter from Trent to Ankin stating that Trent was owed $2645.49 in costs; (F) e-mails between Ankin and Trent in 2021 regarding production of plaintiff's file; (G) Trent's December 27, 2021, letter to Ankin stating that Trent was owed $2660.34 in costs; (H) a December 27, 2021, e-mail from Ankin seeking production of plaintiff's file; (I) a December 27, 2021, e-mail from Trent to Ankin reiterating the claim for $2660.34 in costs; and (J) two documents, *i.e.*, "Answers to Interrogatories to Plaintiff" and "Response to Request to Produce to Plaintiff," which Trent filed in the Chandler case.

*quantum meruit*; and (3) it was entitled to reimbursement of $2660.34 in costs. Trent's attached invoice for services rendered from March 22, 2019, through July 27, 2021, reflected a balance due of $42,596.54, which comprised Trent's fees and costs. In an attached affidavit, attorney Marc P. Trent averred that he performed the work detailed in the invoice at his standard $350 hourly rate, "which is a fair and reasonable rate in Kane County."

¶ 10    First, Trent argued that it was entitled to maintain a common law retaining lien on plaintiff's file to secure payment. According to Trent, surrendering possession of plaintiff's file would have defeated the lien. Trent further argued that, contrary to plaintiff's position, Trent's assertion of the retaining lien did not justify reducing Trent's lien to zero.

¶ 11    Second, as to its claim for fees, Trent argued that it performed significant work while representing plaintiff and thus was entitled to a proportionate majority share of attorney fees incurred in the cases. According to Trent, it (1) "compiled and reviewed in detail the medical records of [p]laintiff related to treatment obtained in connection with the incidents at issue"; (2) "conducted telephone conferences, office conferences, and sent correspondence to [plaintiff] on a regular basis"; (3) "corresponded with the insurance companies and later counsels for [d]efendants ***, including letters, phone conferences, [and] production of documents related to the incidents"; (4) "reviewed the property damage claims made by [p]laintiff and obtained offers in the amounts of $2,953.43 and $1,646.68"; (5) "sent demands for settlement on each of the matters, and obtained an offer for settlement from [defendant] Chandler"; (6) "filed two lawsuits in the instant matter against each [d]efendant"; (7) "filed a motion to consolidate the matters"; (8) "propounded discovery upon both [d]efendants, including: [Rule] 213(f) Interrogatories[,] Interrogatories[,] [Rule] 237 Notice to Produce[,] [and] [Rule] 214 Requests for Production"; (9) "filed a Petition for Rule to Show Cause to enforce compliance with [p]laintiff's discovery

requests"; and (10) "completed Answers to Written Discovery, including: Answers to [Rule] 213(f) Interrogatories[,] Answers to Interrogatories[,] Answers to [Rule] 237 Notice to Produce[,] [and] Answers to [Rule] 214 Requests for Production."

¶ 12     Finally, Trent claimed it was entitled to $2660.34 in costs.  In addition to his invoice, Trent attached a December 27, 2021, letter to Ankin, which set forth Trent's "Current Cost List" as follows:

> "Northwestern Medicine Records: $371.19
>
> Advocate Lutheran General Hospital Records: $354.81
>
> AMITA Health Mercy Medical Center Records: $107.95
>
> The Spine Center Records: $102.59
>
> Dr. Avi Bernstein Expert Medical Report: $850.00
>
> Filing and Service Fees: $845.80
>
> Police Reports: $28.00
>
> Total: $2660.34"

¶ 13                               C. Plaintiff's Reply

¶ 14     In reply, plaintiff contended that (1) Trent should be awarded as costs only its claimed filing and service fees ($845.80) and medical expert report fee ($850) and (2) Trent's attorney fees request was unreasonable and should be denied or greatly reduced.

¶ 15     First, plaintiff alleged that, when Ankin requested plaintiff's file from Trent, Trent advised Ankin that it was requesting payment of its costs.  Trent further advised Ankin of the costs to copy the file.  When Ankin advised Trent that it was willing to pick up the file and copy it at its own expense, Trent refused.  As a result, Ankin was required to "re-request" plaintiff's medical records and bills.  Thus, Ankin maintained that Trent should not be reimbursed for the costs regarding

plaintiff's medical bills and records, which totaled $964.54. Ankin conceded that Trent should be reimbursed $845.80 for its filing and service fees and $850 for the medical expert report, totaling $1695.80.

¶ 16    Second, plaintiff contended that Trent's fee request was unreasonable. Plaintiff argued that, when Trent withdrew, "minimal" discovery had been conducted and no depositions had been taken. Plaintiff asserted that the only discovery conducted by Trent was answering written discovery in the Chandler case. According to plaintiff, after taking over the case, Ankin served discovery and answered written discovery in the White case. Plaintiff attached copies of plaintiff's responses, prepared by Ankin, to "White's Interrogatories," "White's [Rule] 213(f) Interrogatories," and "White's Rule 214 Request to Produce." Plaintiff asserted that Ankin was required to supplement discovery in the Chandler case because information was omitted or unclear. Ankin also learned that Trent had not resolved plaintiff's property damage claim in the Chandler case. Ankin later resolved that claim with the insurance company, and checks were forwarded to plaintiff.

¶ 17    Plaintiff further alleged that, after completing written discovery and obtaining additional evidence, Ankin prepared and presented plaintiff for his deposition. Thereafter, Ankin requested and arranged for Chandler's and White's depositions, and both were set for October 18, 2022. At the same time, Ankin made a policy-limits demand in each case. Over the next four to five weeks, Ankin repeatedly followed up with defense counsels. On October 17, 2022, almost one year after Ankin took over the case, Chandler's insurance company tendered the $50,000 policy limit. On October 18, 2022, counsel deposed White. Four days later, White's insurance company tendered the $100,000 policy limit. After reaching settlements in both cases, Ankin executed the necessary releases and other documents to finalize both settlements.

¶ 18    Plaintiff further alleged that Ankin

"contacted Medicare to obtain the conditional payments and Final Demand letters in both cases, negotiated multiple physician's and hospital liens in both cases, initiated inquiry into Public Aid's payment of any medical bills, obtained the Public Aid lien in both cases, obtained med pay settlements/waivers for medical payment made under [plaintiff's] own auto insurance policy, and initiated an under insured motorist claim. Favorable lien resolutions were obtained by [Ankin] to the various liens asserted under the Physician's and Hospital Lien Act."

¶ 19    Plaintiff contended that plaintiff retained Trent on a contingency basis and that the only offer that Trent obtained was a $4000 offer in the Chandler case. Plaintiff argued that, if the trial court were inclined to award Trent fees in *quantum meruit*, Trent's claim of $42,506.54 (which included costs) should be drastically reduced. Plaintiff noted that Trent's invoice reflected 130 hours spent on plaintiff's cases, yet Trent had not even completed discovery. Plaintiff also asserted that (1) all of Trent's time entries were in 0.25-hour increments when billing is customarily done in 0.10-hour increments; (2) Trent billed almost 19 hours for "[r]eview of [f]ile," without any explanatory details in the multiple entries; (3) virtually every entry was billed at attorney rates when many entries were for paralegal or clerical work; (4) Trent billed for an unresolved property damage claim; (5) entries listed as " 'staff' " should not be considered; (6) entries for "[d]rafting" a document and then "[r]eview[ing]" or "[f]inaliz[ing]" that same document were duplicative and should be stricken; and (7) several entries amounted to "gross overbilling," *e.g.*, billing four hours to generate written discovery to serve on one defendant.

¶ 20    In conclusion, plaintiff argued that the trial court should adjudicate Trent's costs at $1695.80 and award a contingency fee of $1333.33 or, alternatively, a fee in *quantum meruit* of $4500.

¶ 21        D. Hearing on Plaintiff's Motion to Adjudicate Trent's Attorney Liens

¶ 22    A hearing took place on February 24, 2023.  At the outset, the trial court indicated that it wished to confirm with Trent the timeline of the case.  The court noted that plaintiff retained Trent in March 2019, that Trent received a policy declaration from White's insurance company in September 2019, and that Trent thereafter made a $200,000 demand against a $100,000 policy declaration, "which obviously did not get any offers."  The court further noted that, in the Chandler case, "[t]here was no movement on the property damage claim that [plaintiff] wanted to present" and that a complaint was filed on July 9, 2020.  A separate complaint was later filed (on January 22, 2021) against White.  The cases were later consolidated.  The court, "having reviewed the file," noted that Trent was requesting an amount that "would be presumed by some to be a standard third of the proceeds of the settlement in this case, $42,596.54, which includes costs."  In response, Trent clarified that the amount was "based on *quantum meruit*."  Thereafter, the trial court stated:

> "THE COURT: The problem I have with *quantum meruit* is I have some questions for you.
>
> I went through the billing records in this case.  And on July 9th, 2020, the lawsuit that was filed was a full six paragraphs, two pages long.
>
> And then the lawsuit that was filed or the complaint that was filed in—let's see when that [was] filed—the consolidated case which I am looking for right now—one second, *** was another two pages long and looks to be a repeat of the Chandler case in terms of the allegations.

I have some difficulty[,] reviewing your billing records[,] with a substantial amount of review from what appears to be April, 2019, through the filing of these two complaints which amounts to a substantial number of hours in which there appears to be virtually no discovery conducted, no real litigation other than for a rule to show cause that was filed against one of the defendants that apparently didn't result in much litigation.

And if the complaints had a certain amount of complexity to them or if this was something other than an automobile crash that there was a complexity of the issues presented by these complaints, I might think differently.

But there are a substantial number of hours related to reviewing documents, taxes, calls about different medical records, reviewing an invoice, things of that nature that I— seem inconsistent with the lack of complexity in this case, the limit of the policies at issue, and the very limited nature of the complaints that are filed.

So I have to tell you I am not going to enter a ruling from the bench today. I am going to give you a written ruling on this.

The Court does not believe you are entitled to anywhere near the one-third *quantum meruit* or that level of *quantum meruit* that you are seeking.

MR. TRENT: May I respond, [Y]our Honor?

THE COURT: I also note that there is a substantial point made—it is not an enormous amount of money—but Ankin *** for their efforts in terms of their emails and their submissions suggest rather strongly that they were willing to come pick up the file from your office. And that was a matter that was delayed. Either you were looking for costs to be paid or you were insisting on costs being paid. None of which they had an obligation to do at the time.

It seems to me that this case has sort of an overlay of a disagreement between you and the plaintiff.

Ankin *** appears to have after a minimal amount of discovery and a few depositions been able to settle the matters for their respective $50,000 and $100,000 policy limits without much effort.

So I don't think the effort that you have indicated in your bills is anywhere consistent with what was needed to resolve this case.

So when the Court enters its ruling, please do not be surprised that although you may be entitled to some effort it will be nowhere near what you have demanded."

¶ 23    Trent then argued as follows. Trent had done more than just file a complaint in the White case; it propounded discovery, answered discovery, and filed a petition for a rule to show cause. Also, it spent "a substantial amount of hours on the case. [Plaintiff] had a surgery regarding this matter with extensive medical records." Trent incurred costs and advised Ankin of those costs. Had Trent turned over any documents to Ankin, Trent's retaining lien would have been unenforceable. If plaintiff had reimbursed its costs, Trent would have readily turned over the file. Ankin "spent less time on the case than [Trent] did."

¶ 24    The trial court concluded:

"I think your hours *** in this case are wholly inconsistent with both my experience as an attorney and the nature of cases that appear before me on a regular basis in terms of personal injury cases of which I have a substantial amount of experience.

You have nearly 130 hours in this case, it looks like, by my rough calculation. Maybe a little less.

It demonstrates the nature—by the way, with auto crash cases in the State of Illinois, interrogatories are standardi[z]ed interrogatories now. So there isn't some complexity in drafting those interrogatories. And if you had more than one auto crash case, there is a lot of carryover from those interrogatories.

So I understand the point you are trying to make. I just have a feeling that you are going to be significantly disappointed when the Court makes a thorough analysis of these bills and what is valued in this case."

The court stated that it would issue a written order in 14 days.

¶ 25    On July 14, 2023, after no written order had been filed, Trent filed a motion for a ruling.

¶ 26                                    E. The Written Ruling

¶ 27    On July 20, 2023, the trial court entered its written order. The court began by noting that the matter was "coming to be heard" on plaintiff's "Motion for Adjudication of Attorney's Lien, pursuant to 305 ILCS 5/11-22 and 770 ILCS 23/30." The court also noted that the parties submitted opposing briefs with exhibits and neither had requested an evidentiary hearing. Citing *Coss-Marin v. Feldman*, 2015 IL App (2d) 150610-U, the court found that, although Trent purported to assert a lien under the client services agreement, "the determination of a reasonable and appropriate fee due [Trent] must be made on a *quantum* [*meruit*] basis."

¶ 28    The trial court then made the following factual findings to support its determination of a reasonable fee. The court noted that Trent had performed the following work: (1) filed a two-page complaint (inclusive of the caption) in each case; (2) issued "basic, minimal discovery" in the Chandler case; and (3) made a settlement demand of $200,000 in the White case, which was $100,000 over the policy limits. The court noted that "[n]o party depositions were taken, no F(2)

or F(3) discovery was initiated[,] and no substantive motion practice had taken place." The court also noted that Trent received a $4000 offer in the Chandler case and no offer in the White case.

¶ 29 Concerning Ankin's efforts, the trial court first noted that, after appearing for plaintiff, Ankin "fought with [Trent] to obtain [p]laintiff's file and medical records; ultimately obtaining them and the relevant court filings from opposing counsel." Thereafter, Ankin completed written discovery, as "the majority of it had been unfinished or required supplementation." Ankin also presented plaintiff for a deposition in each case and deposed defendant White. Ankin ultimately succeeded in obtaining a settlement for policy limits in each case. Chandler's deposition proved unnecessary.

¶ 30 The trial court, again citing *Coss-Marin*, set forth the factors to be considered when determining an attorney fee award in *quantum meruit:* (1) the time and labor required, (2) the attorney's skill and standing, (3) the nature and novelty of the case, (4) how difficult the subject matter is, (5) the attorney's degree of responsibility in managing the case, (6) the usual and customary charge for the type of work in the community, and (7) the benefits resulting to the client. See *id.* ¶ 21.

¶ 31 The trial court stated:

"As to the labor involved, the Court finds that [Trent's] efforts were minimal. As reflected by the 2-page brevity of [p]laintiff's complaints, these matters involved simple, straight forward [*sic*] car crashes. A review of [Trent's] billing records submitted to support its lien[ ] demonstrate that each complaint took approximately one (1) hour at the billing rate of $367.00 (20 L 331) and one and a half hours (1.5) at the billing rate of $350.00 (21 L 52). TRENT Ex.A, p. 5 & 8.

Although [Trent's] billing records submitted total $42,596.54, there is no correlated litigation activity to justify anything close to such an amount. Indeed, while the word 'review' is repeated throughout the billing records, [Trent] only claims $1,799.69 in costs related to 'records' or 'reports' that could have involved any kind of substantive review. TRENT Ex. E, p.1 ('Aggregate Medical Records and Expert Medical Report', 'Police Report.') Such *de minimus* [*sic*] amounts, in this Court's experience, do not reflect the type of voluminous records that beget lengthy substantive review. Finally, there is no evidence of meaningful actions taken by [Trent] that could appear to have motivated or procured the settlements (fully [*sic*] policy limits in each case), which benefited Plaintiff."

¶ 32 The trial court concluded that Trent was entitled to $3392 in attorney fees, comprising (1) $892 for "[r]easonable time spent drafting the complaints," which was "stated in the records [as] $367.00 [and] $525.00," and (2) $2500 (inclusive of both cases) for time spent "reviewing the minimum [*sic*] medical records and general correspondence necessary to draft the simple complaints in these matters." The court also concluded that Trent was entitled to $1695.80 in costs, consisting of (1) $845.80 in filing and service fees and (2) $850 for the medical expert report. The court stated: "No remaining costs are awarded given [Ankin's] need to secure police reports and medical records from third parties."

¶ 33 This timely appeal followed.

¶ 34 II. ANALYSIS

¶ 35 Trent contends that the trial court abused its discretion by (1) failing to award Trent all expended costs and (2) by awarding Trent attorney fees of less than 7% of the total settlement in the cases.

¶ 36　　In response, plaintiff contends that Trent's appeal should be dismissed because Trent has failed to comply with Illinois Supreme Court Rules 341(h)(6) (eff. Oct. 1, 2020) (governing the contents of the statement of facts in a party's brief) and 342 (eff. Oct. 1, 2019) (requiring that an appendix be included in the appellant's brief). Alternatively, plaintiff argues that the trial court did not abuse its discretion in its award of *quantum meruit* fees and costs.

¶ 37　　We first address the deficiencies in Trent's brief. Rule 341 governs the form and content of appellate briefs; compliance with the rule is mandatory. *In re Marriage of Reicher*, 2021 IL App (2d) 200454, ¶ 30. "The failure to comply with the [supreme court] rules is not an inconsequential matter and may justify striking the brief and dismissing the appeal." *Id.* "The striking of a party's brief and dismissal of the appeal, however, is a harsh sanction, which is ordinarily reserved for the most egregious failures to comply with the rules and those that hinder our review." *Id.* We agree that Trent has (1) violated Rule 341(h)(6) in several respects, such as by failing to include the necessary record citations in his statement of facts, and (2) violated Rule 342 by failing to include an appendix. However, these deficiencies do not hinder or preclude our review, because the issue on appeal is relatively straightforward and the record is not voluminous. Thus, we decline plaintiff's request to dismiss the appeal. However, we admonish Trent to ensure its compliance with the supreme court rules in any future submissions.

¶ 38　　We now set forth the applicable legal principles. "An attorney who withdraws from a case for a justifiable cause or is terminated without cause may recover compensation for services rendered." *Twin Sewer & Water, Inc. v. Midwest Bank & Trust Co.*, 308 Ill. App. 3d 662, 667 (1999). Although any contingent fee contract no longer exists, a discharged attorney is entitled to payment on a *quantum meruit* basis for services rendered before withdrawal or discharge. *DeLapaz v. SelectBuild Construction, Inc.*, 394 Ill. App. 3d 969, 973 (2009). "The term

'*quantum meruit*' literally means ' "as much as he deserves." ' " *Id.* (quoting *Much Shelist Freed Denenberg & Ament, P.C. v. Lison*, 297 Ill. App. 3d 375, 379 (1998), quoting *First National Bank of Springfield v. Malpractice Research, Inc.*, 179 Ill. 2d 353, 365 (1997)).

¶ 39    In determining the *quantum meruit* award for services rendered, the trial court should consider several factors, including

> " 'the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the client.' " *Id.* (quoting *Will v. Northwestern University*, 378 Ill. App. 3d 280, 304 (2007)).

The trial court has "broad discretion" in making its determination, "particularly because of its close observation of the attorney's work and its deeper understanding of the skill and time required in the underlying case." *Will*, 378 Ill. App. 3d at 304. The burden of proof is on the attorney to establish the value of his services. *Id.* However, the court " 'is not limited to the evidence presented in arriving at a reasonable fee but may also use the knowledge it has acquired in the discharge of professional duties to value legal services rendered.' " *Id.* (quoting *Johns v. Klecan*, 198 Ill. App. 3d 1013, 1022 (1990)). We review the court's determination of a reasonable fee under the abuse-of-discretion standard. *Id.* We will find an abuse of discretion only when the court's decision is "arbitrary or fanciful or when no reasonable person would adopt the view of the circuit court." *Brown v. Illinois State Police*, 2021 IL 126153, ¶ 49.

¶ 40                    A. Trent's Claims of Error Regarding the Costs Award

¶ 41    We first consider Trent's claim that the trial court abused its discretion in its award of costs. Trent seems to be making two distinct arguments. First, Trent argues that it should have been

awarded its total expended costs of $2721.54, as reflected in its 11-page invoice. Second, Trent argues that the court's $1695.80 costs award (which included $845.80 in filing and service fees) was erroneous because, according to Trent, its invoice reflects filing and service fees totaling $907, not $845.80.

¶ 42    We address the latter argument first. We first note that, although Trent claims on appeal that it is entitled to $2721.54 in total costs, that was not the amount Trent requested below. In its response to plaintiff's motion to adjudicate, Trent expressly argued that it was seeking $2660.34 in total costs. This was also the amount of costs that Trent said was due in its December 27, 2021, correspondence to Ankin. Moreover, that correspondence also advised Ankin that Trent's "Filing and Service Fees" totaled $845.80, not $907 as Trent now claims. Thus, given Trent's own representations below of the filing and service fee, we find no abuse of discretion in the trial court's reliance on those amounts in awarding Trent $1695.80 in costs.

¶ 43    We next consider whether the trial court erred in failing to award Trent the balance of its claimed costs. As noted, the court refused to award Trent its costs to obtain the police reports and various medical records. The court reasoned that Ankin was forced to duplicate those costs because, when Ankin attempted to obtain plaintiff's file from Trent, Trent asserted a retaining lien on the file and refused to turn it over without first being reimbursed its costs. Trent argues (although not specifically within the context of his costs argument) that the court erred in considering Trent's retaining lien when determining an appropriate award.

¶ 44    An attorney can assert two types of liens to obtain payment of outstanding legal fees: (1) a "charging or special lien," which attaches to the proceeds recovered in the underlying litigation, and (2) a "retaining or general lien," which attaches to the client's property that the attorney received during representation. *Twin Sewer & Water*, 308 Ill. App. 3d at 667.

"[T]he retaining lien exists on all papers or documents of the client placed in the attorney's hands in his professional character or in the course of his employment. *** [It is] the attorney's right to retain possession of property belonging to his client which comes into his hands *** until his charges are paid. [Citation.] In other words, the retaining lien is a method of holding the client's property hostage until fees are paid. [Citation.]" (Internal quotation marks omitted.) *Id.*

"As a possessory lien, the retaining lien's existence is dependent upon the attorney's continued possession of the client's property and is only lost if the attorney surrenders possession of the documents." *Id.* "Until the attorney receives payment in full or the client posts adequate security for payment, assertion of the lien through continued possession of the documents is proper." *Id.* "However, a common law retaining lien cannot be actively enforced by a judicial proceeding." *Id.* It is "a passive lien." (Internal quotation marks omitted.) *Id.* at 668.

¶ 45 Here, Trent sought leave to withdraw as plaintiff's counsel and, as a result, plaintiff was required to secure new counsel. At that time, Trent certainly understood that the underlying matters were far from concluded and that the medical records and police reports in Trent's possession were necessary for new counsel to successfully pursue plaintiff's claims. Indeed, Ankin offered to pick up the materials, make copies, and return the materials to Trent. But Trent refused to turn over the file without first being reimbursed its costs by plaintiff. Although Trent was well within its rights to retain plaintiff's file, its decision to do so caused Ankin to incur additional costs to obtain the necessary medical records and police reports. Given the case's procedural posture when Trent withdrew as counsel, the trial court properly concluded that Trent's refusal to turn over these materials was unreasonable. Thus, under the circumstances, we find no abuse of discretion in the court's decision that Trent should not be awarded costs concerning these

materials. Accordingly, based on the foregoing, the court did not abuse its discretion in awarding Trent only $1695.80 in costs.

¶ 46                    B. Trent's Claim of Error Regarding the Fees Awarded

¶ 47    Trent argues that the trial court abused its discretion in awarding Trent attorney fees of less than 7% of the total settlement in the cases. According to Trent, the court's ruling is "devoid of any logic." Trent further argues that the court mischaracterized plaintiff's cases as involving "simple, straight forward [*sic*] car crashes," failed to reference either firm's responsibility in managing the case, did not define the usual and customary charge in the community for the work performed, and wrongly determined that the only benefit provided to plaintiff were the settlements. Trent also argues that the trial court refused to acknowledge the "substantive" litigation work it performed, such as filing an answer to Chandler's affirmative defenses, a petition for a rule to show cause in the White case, and a motion to consolidate the two cases.[2] In addition, Trent argues that certain citation errors and factual errors in the court's written order further indicate that the court abused its discretion.

¶ 48    We first address Trent's claim of errors in the written order. Trent notes that the order indicates that the matter was being heard "pursuant to 305 ILCS 5/11-22 and 770 ILCS 23/30," which are citations to the Illinois Public Aid Code and the Health Care Services Lien Act, respectively. According to Trent, the trial court likely carried over the incorrect citations from plaintiff's motion to adjudicate Trent's attorney liens, in which plaintiff cited the same inapplicable

---

[2]The only discovery-related documents attached to Trent's response were "Answers to Interrogatories to Plaintiff" and a "Response to Request to Produce Plaintiff" filed in the Chandler case.

statutes. Trent further notes that the trial court improperly relied on *Coss-Marin*, an unpublished decision of this court filed in 2015. See Ill. S. Ct. R. 23(e)(1) (eff. July 1, 2011) (under the version of Rule 23 in effect when *Coss-Marin* was filed, orders entered under Rule 23(b) were nonprecedential and could be cited by litigants only to support contentions of double jeopardy, *res judicata*, collateral estoppel, or law of the case).

¶ 49    Although Trent is correct that the trial court's written order cited inapplicable statutes and relied on an unpublished decision, any error is harmless because the record makes clear that the court applied the correct legal analysis—relying on well-settled principles and the relevant factors—in determining a reasonable *quantum meruit* fee.

¶ 50    Nevertheless, we agree with Trent that one aspect of the trial court's ruling is factually incorrect. The court awarded Trent fees specifically related to the preparation of each complaint— the court awarded "one (1) hour at the billing rate of $367.00" in the Chandler case and "one and a half hours (1.5) at the billing rate of $350.00" in the White case, for a total of $892. We have two concerns with this determination. First, the "billing rate of 367.00" is incorrect. As noted on page 5 of Trent's invoice, $367 reflects the *filing fee* for the Chandler complaint, not the hourly rate. Second, the trial court misstated the hours Trent spent preparing the complaints in the cases. Page 4 of Trent's invoice (a page the court did not cite) indicates that Trent spent 1.5 hours, not 1 hour, in the "Initial Drafting" and "Finalization" of the Chandler complaint. Page 8 of Trent's invoice shows that Trent spent 2.5 hours, not 1.5 hours, in the "Initial Drafting" and "Finalization" of the White complaint. Therefore, based on Trent's $350 hourly rate (which the court seemingly accepted as reasonable and customary), Trent should have been awarded $1400 for its work related to the two complaints. Given the court's express intent to award Trent its fees related to the preparation of the complaints, we exercise our authority under Illinois Supreme Court Rule

366(a)(5) (eff. Feb. 1, 1994) to modify the court's judgment to award Trent $1400 for preparing the complaints.

¶ 51    We now turn to the balance of the fee award. In addition to the fees awarded for the preparation of the complaints, the trial court awarded Trent "$2,500 total [fees] (inclusive of both cases) related to reviewing the minimum [*sic*] medical records and general correspondence necessary to draft the simple complaints in these matters." Although the written order does not detail the court's calculations, the reasons it gave at the hearing persuade us that the award is not "devoid of logic" and that the court did not ignore "substantive" litigation work performed by Trent.

¶ 52    The reasoning behind the award is clear. At the hearing, the trial court stated that it "went through the billing records," taking into account the "very limited nature of the complaints" and their "the lack of complexity" and the fact that "no real litigation" had taken place. Based on these considerations, the court determined that the hours claimed by Trent were "wholly inconsistent with both [the court's] experience as an attorney and the nature of cases that appear before [it] on a regular basis." The court specifically noted that it had "a substantial amount of experience" with personal injury cases. In its written order, the court again emphasized that the matter involved "simple, straight forward [*sic*] car crashes." Although Trent takes issue with this characterization, the court's conclusion was reasonably based on the "2-page brevity of [the] complaints" and the court's own experience. The court also noted that, "in [its] experience," the $1799.69 in costs to obtain the medical records (which included the separate costs to obtain medical records from four different facilities and $850 for a medical expert report) did "not reflect the type of voluminous records that beget lengthy *** review." Although Trent also disputes the court's characterization of the medical records, Trent did not produce evidence that the records were particularly

complicated or required lengthy review. Given the court's "substantial" experience with personal injury cases, we cannot say the court's reasoning on this point was an abuse of discretion.

¶ 53    Also at the hearing, the trial court acknowledged that Trent had filed a petition for a rule to show cause, yet it "didn't result in much litigation." In its written order, the court acknowledged that Trent issued "basic minimal discovery" in the Chandler case, but the court noted that "the majority of [the discovery] had been unfinished or required supplementation" by Ankin. The court emphasized that, in addition to completing the remaining discovery, Ankin presented plaintiff for his deposition, made policy limit demands in each case, deposed one defendant, and obtained settlements in each case for the full policy limits.

¶ 54    In determining an appropriate fee, the trial court may consider "the benefits resulting to the client." (Internal quotation marks omitted.) *DeLapaz*, 394 Ill. App. 3d at 973. In its written order, the court expressly stated that "there is no evidence of [any] meaningful actions taken by [Trent] that could appear to have motivated or procured the settlements (fully [*sic*] policy limits in each case), which benefited Plaintiff." Thus, the court considered all work done by Trent and, based on the court's own substantial experience in personal injury cases, determined what it deemed a reasonable fee. Although Trent argues that the court wrongly determined that the only benefits plaintiff received were the settlements and that it overlooked other benefits provided by Trent while serving as plaintiff's counsel, the court *did* award Trent for the benefits that it deemed meaningful under the circumstances, including the drafting of the complaints and the review of the medical records and correspondence necessary for drafting them.

¶ 55    Thus, we cannot say that the trial court's $2500 award—which amounts to just over 7 hours at Trent's $350 hourly fee—for Trent's review of the medical records and correspondence

necessary for drafting the complaints, in addition to the now modified $1400 award for drafting the complaints, is an abuse of discretion.

¶ 56                                    III. CONCLUSION

¶ 57    For the reasons stated, the judgment of the circuit court of Kane County is affirmed as modified to reflect an award of $3900 in attorney fees and $1695.80 in costs, for a total judgment of $5595.80.

¶ 58    Affirmed as modified.

¶ 59    JUSTICE HUTCHINSON, specially concurring.

¶ 60    I agree with the result on this case; however, I part company with my colleagues on how this case should be resolved. Respectfully, I would not have decided this case on the merits.

¶ 61    Were it up to me, I would have stricken Trent's briefs and dismissed this appeal. "Illinois Supreme Court rules are not suggestions; they have the force of law and must be followed." *Ittersagen v. Advocate Health & Hospital Corp.*, 2021 IL 126507, ¶ 37 (citing *People v. Campbell*, 224 Ill. 2d 80, 87 (2006)). Here, Trent did not follow the rules, and I am not inclined to overlook its errors.

¶ 62    While some mistakes can of course be forgiven—and often are in the course of reviewing an appeal—I believe that Trent's blunders *do* hinder our review. *Supra* ¶ 37 (citing *In re Marriage of Reicher*, 2021 IL App (2d) 200454, ¶ 30). In particular, I find that Trent's briefs fail to comply with Rule 341(h)(7) (eff. May 28, 2018). Trent failed to offer any serious explanation on the core legal issues in this case—*i.e.*, what "substantive litigation work" it performed to justify its initial $42,596.54 claim, or how the trial court "failed to consider" evidence of the minimal work Trent performed over nearly two years on Mr. Poreba's underlying personal injury suits. Furthermore, when the appellee pointed out the citation errors in Trent's opening brief (*cf.* Ill. S. Ct. R.

341(h)(6)), Trent included a list with partial citations to use as a sort of decoder ring in its reply brief. Yet Trent never attempted to submit a supplemental appendix, as if to suggest that we are not entitled to documentation to clarify the record on appeal. *Cf.* Ill. S. Ct. R. 342 (eff. Oct. 1, 2019). And what is worse, Trent's briefs are cavalier without a hint of irony: They are rife with errors and misspellings, yet chide the trial court judge for what are, by comparison, trivial mistakes in its written order, which affected nothing.

¶ 63     There's an old expression that, "if you find yourself in a hole, stop digging." (https://en. wikipedia.org/wiki/Law_of_holes) (accessed March 13, 2024). Wise words. Trent should consider itself lucky that the majority was more forgiving of its professional mistakes when briefing this appeal. I would not have been. Nevertheless, because my colleagues have presented a just and adequate resolution to this case, I specially concur.